UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIMAR SYSTEMS, INC.,

    Plaintiff,

                                    Case No. 06-13936
-vs-                                       Hon: AVERN COHN

FOUNDRY NETWORKS LLC,

    Defendant.
_____/

**MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATIONS OF SPECIAL MASTER (Doc. 127)
AND
GRANTING DEFENDANT'S MOTION FOR APPLICATION OF COLLATERAL ESTOPPEL TO BIND PLAINTIFF TO FACT ISSUES DECIDED REGARDING "GREEN BOOK" AND THE "AMD APPLICATION NOTE" PRIOR ART, AND INVALIDITY OF CLAIM 1 OF THE '260 PATENT (Doc. 89)**

**I. Introduction**

This is a patent case. Plaintiff Chrimar Systems Inc. (Chrimar), holder of U.S. Patent Number 5,406,260 (the '260 patent) covering a Network Security System for Detecting Removal of Electronic Equipment, is suing Foundry Networks, LLC (Foundry) for infringement in the making, etc., of devices that fall within the scope of one or more claims of the '260 patent. At this time, the sole claim in issue is representative Claim 17.

Now before the Court is Foundry's Motion for Application of Collateral Estoppel to Bind Plaintiff to Fact Issues Decided Regarding "Green Book"and the "AMD Application Note" Prior Art, and Invalidity of Claim 1 of the '260 Patent. Foundry asserts that these issues were previously decided by the Court in Chrimar Systems, Inc. v. Cisco Systems,

1

Inc., 318 F. Supp. 2d 476 (E.D. Mich. 2004) (Cisco). The motion was referred to a Special Master who issued a report recommending that the Court grant Foundry's motion.[1] After both parties objected to the report the Court referred the objections to the Special Master to be addressed as motions for reconsideration (Doc. 123). The Special Master filed a revised report and recommendation (R&R) that again recommended that the Court grant Foundry's motion (Doc. 127). Chrimar again objected. For the reasons that follow, the recommendation of the Special Master will be adopted as supplemented and Foundry's motion will be granted.

## II. Background

A brief description of the '260 patent and the related patent infringement litigation follows:

The '260 patent describes a Network Security System for Detecting Removal of Electronic Equipment. Claim 1 is a means-plus-function claim that discloses "a security system for detecting disconnection of electronic equipment from a network." Claim 14 is a method claim that discloses "a method for detecting unauthorized disconnection of remotely located electronic equipment which has existing data communication lines connecting the equipment to a network." Claim 17 is a method claim that discloses "[t]he

---

[1] Foundry also filed a Motion for Partial Summary Judgement of Noninfringment of Claim 17 of U.S. Patent No. 5,406,260 by MidSpan Products Based on the Doctrine of Collateral Estoppel (Doc. 85). After the Special Master filed a report and recommendation, (Doc. 112), and a revised report and recommendation, (Doc. 128) the parties stipulated that the motion was moot due to a subsequent license with respect to the MidSpan products (Doc. 135, Ex. A). The Court entered an order finding the motion moot (Doc.138).

method as defined in Claim 14 werein said existing data communication lines comprise 10BaseT wiring."

In Chrimar Systems, Inc. v. Cisco Systems, Inc. (Case No. 01-71113), Chrimar alleged that several devices produced by Cisco fell within the scope of the '260 patent. Cisco filed a motion for partial summary judgment on the basis that Claim 1 was invalid because it was anticipated by two pieces of prior art: the Green Book and the AMD Application Note. In Cisco, the Court agreed and granted Cisco's motion. The parties subsequently settled their dispute and a consent judgment was entered.

In this action, Chrimar alleges that several devices produced by Foundry fall within the scope of the '260 patent. Claim 17 was selected as a representative claim. The parties engaged in substantial discovery and the Court issued a Markman order construing disputed terms in Claim 17 (Doc. 69). Some time after discovery had commenced, Foundry filed its motion seeking to apply collateral estoppel to 38 findings from Cisco regarding the teachings of the prior art and the Court's conclusion that Claim 1 was invalid as anticipated by the prior art.

### III. Legal Standard

A district court must conduct a de novo review of the parts of a special master's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1)(B). The district "court may accept, reject, or modify, in whole or in part the findings or recommendations" of a special master." Id.

## IV. Analysis

Chrimar raises five objections to the Special Master's recommendation that collateral estoppel be applied in this case. It objects (1) that Foundry waited too long to raise the issue of collateral estoppel, (2) that collateral estoppel is inappropriate because Claim 17 differs from Claim 1, (3) that the R&R misapplies the law of collateral estoppel with respect to consent judgments, (4) that the Court misunderstood the teachings of the prior art, and (5) that the Special Master opined on issues that were not addressed in Cisco.

### A.

Chrimar objects that Foundry waited too long to raise the applicability of collateral estoppel and should be equitably barred from asserting it. Chrimar relies on the fact that Foundry waited until discovery was well under way and more than twenty depositions were taken before filing its motion. Although the Sixth Circuit has suggested that a defense of collateral estoppel may be waived if not raised in the pleadings, a court is not required to apply waiver if the defense is raised at a later time. See Gilbert v. Ferry, 413 F.3d 578, 580 (2005). Although Foundry did not file its motion until discovery was well under way, it raised the issue of estoppel as its third affirmative defense when answering Chrimar's complaint (Doc. 3). Further, as Foundry notes, the motion for collateral estoppel only relates to two of the prior art references at issue in this case and earlier invocation of collateral estoppel would not have significantly reduced the amount of discovery needed. Under these circumstances, there is no reason to bar Foundry from asserting collateral estoppel at this time.

### B.

Second, Chrimar objects that the application of collateral estoppel will result in inconsistent results because Claim 17 differs from Claim 1. Specifically, Chrimar says that Claim 17 is a method claim while Claim 1 is a means-plus-function claim, Claim 17 contains different terms than Claim 1, and that the Markman claim construction orders have defined terms differently between Claim 17 and Claim 1. As a result, Chrimar says that many of the Court's findings in Cisco are not relevant and that the application of collateral estoppel would be futile and perhaps produce inconsistent results. In response, Foundry asserts that there are "large similarities between the claim recitations" and that the application of collateral estoppel, while not resolving the validity of Claim 17, will "significantly streamline further proceedings" in this case.

The Special Master also addressed this issue, finding that there is almost certainly overlap in the issues in dispute between the cases:

> The only scintilla of doubt relates to whether the issues in dispute in Cisco were in fact the same issues that are in dispute today. In particular, the determination that a limitation is disclosed by a prior art reference is not automatically a determination that the same-worded limitation in another claim is disclosed by the same reference. The reason for this is that, even though there is a powerful presumption that claim limitations will be construed consistently, this is not an absolute requirement even within a single claim. *See, e.g.*, *Pitney Bowes, Inc. V. Hewlett-Packard Co.*, 182 F.3d 1298, 1310 (Fed. Cir. 1999) (explaining that while as a general rule the same term in the same claim should be construed consistently, nevertheless a written description can set forth more than one definition of a claim term). But this is likely not a significant issue here. The scope of the preclusion sought by defendants only reaches the disclosure of the prior art as such. Thus, while it is unlikely that the corresponding limitations of the other '260 patent claims will be differentiated from those in Claim 1, it is a question of claim construction that does not need to be resolved in this motion.(Doc. 127, p. 7, n.5).

5

The Court agrees with the Special Master's assessment that there are issues which are common to both the Cisco litigation and this action, particularly with respect to the teachings of the prior art. As a result, the application of collateral estoppel is appropriate. However, the Court also recognizes that there are some issues which are unique to Claim 17. These unique issues fall outside the scope of the findings of Cisco and are not subject to collateral estoppel. Chrimar will have an opportunity to assert that specific issues are distinct to Claim 17 and are not subject to collateral estoppel based on Cisco.

## C.

Next, Chrimar asserts that collateral estoppel is inappropriate because the Cisco litigation was resolved by a consent judgment.[2] While Chrimar is correct that the litigation between Chrimar and Cisco was resolved by a consent judgment, the issues in this motion – the teachings of the Green Book and AMD Application Note and the validity of Claim 1 of the '260 patent – were resolved by the Court in a motion for summary judgment.[3] The fact that parties subsequently resolved their dispute through a consent judgment does not automatically preclude the application of collateral estoppel to prior judicial determinations. Hartley v. Mentor Corp., 869 F.2d 1469, 1472 (Fed. Cir. 1989) ("[T]hat a judgment is entered by stipulation does not in and of itself remove the effect of a court's prior

---

[2]Chrimar says that the Special Master failed to apply the correct burden in this matter. However, it appears to object solely on the basis that Foundry failed to discuss the fact that the Cisco litigation was resolved by a consent decree. However, the Court notes that the Special Master did apply the proper legal standard. See United States v. Cinemark USA, Inc., 348 F.3d 569, 583 (6th Cir. 2003).

[3]While the motion was for partial summary judgment, the validity of claim 1 of the '260 patent was the subject of a final judgment. Because Chrimar's claim involved a single count of infringing the '260 patent, the motion did not resolve the issue of infringement with respect to the other claims included in the '260 patent.

6

determination of specific issues in the litigation. A stipulated or consent judgment, like a contract, must be construed to determine its effects in light of all of the circumstances."). Because Foundry seeks to apply collateral estoppel to the partial summary judgment rather than the consent judgment, Chrimar's extensive citation to cases addressing the applicability of collateral estoppel to consent judgments is inapplicable to the motion currently before the Court.

Further, as the Special Master noted, there is nothing in the consent judgment to suggest that the parties intended to remove the effect of Cisco with respect to the invalidity of Claim 1. The decision is not specifically mentioned in the consent judgment and the parties did not ask the Court to vacate the order. Further, Chrimar cannot rely on the fourth preamble clause which states "WHEREAS, the Parties desire to settle all claims presented in the Lawsuit on any grounds relating to the lawsuit and all actions or conduct that predated the execution of this Settlement Agreement, fully finally, and without making any admissions or concessions concerning their respective factual or legal positions." At best, this clause is ambiguous with respect to the Court's determination of invalidity and does not clearly define the parties' expectations. However, the Court agrees with the Special Master that "[t]his standard term merely provides that neither party is admitting liability in the settlement. But the Court's ruling on validity is not a party admission that can be disclaimed by such language." Therefore, the subsequent consent judgment does not affect the applicability of collateral estoppel to Cisco.

**D.**

Fourth, Chrimar objects on the basis that the Court wholly failed to grasp the technology disclosed in the Green Book when rendering Cisco. See Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation, 402 U.S. 313, 333 (1971). While Blonder-Tongue provides a limited opportunity to assess whether a patent-holder had a "full and fair chance to litigate . . . in an earlier case," it does not give subsequent courts a license to inquire "whether the prior finding of invalidity was correct." Stevenson v. Sears, Roebuck & Co., 713 F.2d 705, 709 (Fed. Cir. 1983); see also Westwood Chemical, Inc. v. United States, 525 F.2d 1367, 1375 (Ct. Cl. 1975) ("[T]he correctness of th earlier decision is not an issue and is not a prerequisite to the application of the estoppel."). Thus the Special Master was correct in asserting that "[i]f courts had to evaluate the merits of each issue in order to decide whether or not they needed to evaluate the merits of that issue, collateral estoppel would be worthless."

The Court has reviewed Cisco, the Special Master's report and recommendation that was adopted in Cisco, and the papers that Chrimar filed in connection with Cisco. Chrimar made many of the same arguments the Cisco with respect to the meaning of the term "disconnect" that it has made in this case. Moreover, the Court directly addressed Chrimar's arguments in Cisco, incorporated Chrimar's explanation of the Green Book's teaching, and explained why Chrimar's interpretation did not preclude a finding of invalidity. Thus the Court is satisfied that in Cisco it grasped the technology as explained by the parties and the Special Master.

To the extent that Chrimar now seeks to introduce additional evidence that it failed to submit in the Cisco litigation on grounds that it explains the true teachings of the Green

8

Book, the Court is unconvinced. The purpose of the <u>Blonder-Tongue</u> exception is to provide a patent holder with a "full and fair chance to litigate" the validity of a patent. See <u>Stevenson</u>, 713 F.2d at 709. Chrimar was given that opportunity. It may not, after a finding of invalidity, devise a new interpretive strategy and then seek to contest the invalidity of the patent again.

Thus the Court is satisfied that in <u>Cisco</u> it grasped the technology disclosed in the Green Book and was fully receptive to the arguments and evidence submitted by Chrimar at that time. Chrimar did not ask for reconsideration of the decision, did not ask for vacation of the order upon settlement, and did not appeal <u>Cisco</u>. Because Chrimar had a full and fair opportunity to litigate the validity of Claim 1 of the '260 patent, the application of collateral estoppel is proper under <u>Blonder-Tongue</u>.

**E.**

Finally, Chrimar objects that the Special Master opined on issues that were outside of the scope of <u>Cisco</u> and are not entitled to collateral estoppel. Specifically, Chrimar objects to the Special Master's use of the term "voltage discontinuity" while discussing the teachings of the Green Book. The Special Master used the term "voltage discontinuity" when considering whether in <u>Cisco</u> the Court failed to grasp the technology embodied in the Green Book. This discussion was responsive to Chrimar's objection to the Special Master's first report and recommendation. While the Special Master may have used different terms that those used in <u>Cisco</u>, the purpose was to describe the technology embodied in the Green Book and the fact that in <u>Cisco</u> the Court properly grasped the technology. Because it was responsive to Chrimar's own arguments, there is nothing improper in the Special Master's use of the term. Moreover, the Special Master

recommended that the Court apply collateral estoppel to the 38 factual findings attached to his R&R, not to the analysis and conclusions included in the R&R. As a result, there is no risk that the Special Master's own conclusions will be given preclusive effect in this case.

## V. Conclusion

For the reasons stated above, the Special Master's Report and Recommendation is ADOPTED as supplemented and Foundry's Motion is GRANTED. The Court will apply collateral estoppel to the 38 findings in Cisco as reflected in the Special Master's report. A copy of the findings are attached as Appendix A. The Case Manager will schedule a status conference.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: August 30, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 30, 2010, by electronic and/or ordinary mail.

    S/Julie Owens
Case Manager, (313) 234-5160