UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIMAR SYSTEMS, INC.,

    Plaintiff,

-vs-

    Case No. 06-13936
    HON. AVERN COHN

FOUNDRY NETWORKS, INC.,

    Defendant.

_____/

# MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY FEES AND EXPENSES (Doc. 240)

## I. Introduction

This is a patent case. The patent-in-suit is U.S. Patent No. 5,406,260 (the '260 Patent), Network Security System For Detecting Removal Of Electronic Equipment, and particularly Claim 17, which is dependent from Claim 14. In a prior case, the Court found Claim 1 of the '260 Patent invalid. Chrimar Systems, Inc. v. Cisco Systems, Inc., 318 F.Supp.2d 476 (E.D. Mich. 2004).

On August 1, 2012, the Court found Claim 17 invalid (Doc. 234), and dismissed the case (Doc. 235). Plaintiff appealed (Doc. 242). The Federal Circuit affirmed without opinion in accordance with Fed. Cir. R. 36. (Doc. 257).

Now before the Court is Foundry's motion for attorney fees and expenses (Doc. 240) on multiple grounds: 35 U.S.C. §285; Fed. R. Civ. P. 54; 28 U.S.C. §1927 and the Court's inherent power. Foundry seeks $4,900,000 in attorney fees and expenses plus post-judgment interest.[1]

---

[1] Foundry says its total litigation costs are $5,250,000, but asks for an award of $4,900,000.

The motion is DENIED. What follows are the findings of fact and conclusions of law, as required by Fed. R. Civ .P. 54(d)(2)(C).

## II. Procedural Background to Invalidity Ruling

The record reflects a straight forward claim of infringement, and a vigorous defense challenging the validity of Claim 17. Particularly, it was Foundry's motion for summary judgment of invalidity (Doc. 143)[2] which carried the day, the Court finding that Claim 17 was obvious (Doc. 234). The Court said:

> . . .in light of the prior art in the Green Book and the fact that 10BaseT Wiring was well known at the time the '260 Patent was filed, Claim 17 is invalid as obvious. See ¶¶ 34-35, 43-47 and 50-54 of the Post-May 4, 2012 Evidentiary Hearing Report and Recommendation of Expert Advisor to the Court (Doc. 143) [etc] (Ex A to Doc. 234).

Arriving at the invalidity ruling was not an easy road. The invalidity motion, as well as the motion for summary judgment of invalidity, were referred to a special master (Doc. 192). The special master recommended that the motion for summary judgment regarding invalidity be granted, and the motion for summary judgment of non-infringement be denied, on the grounds there were genuine issues of material fact over the issue of infringement. (Doc. 210).

The special master's recommendation and Chrimar's objections generated multiple filings. Because of the complexities of posed by the filings, the Court appointed an expert advisor to assist the Court in the research, analysis and drafting of a decision on the validity of Claims 14 and 17 (Doc. 221). To assist the Court and the expert

---

[2]Defendant also filed a motion for summary judgment of non-infringement (Doc. 168) which was rendered moot in light of the invalidity ruling. As such, the infringement issue was not adjudicated.

advisor in coming to a conclusion on the validity issue, the Court scheduled an evidentiary hearing (Doc. 223). The evidentiary hearing was held on May 4, 2012. Each expert was cross-examined at the hearing. In advance of the evidentiary hearing, each party lodged with the Court the proposed testimony of its expert witness in narrative form (Docs. 226 and 227). These narratives were introduced in evidence at the hearing as Exhibits 1 and 2.

Following the evidentiary hearing, the expert advisor lodged with the Court a document styled

> Post May 4, 2012 Evidentiary Hearing Report and Recommendation of Expert Advisor to the Court, Kim A. Winick, Regarding Foundry Networks, Inc.'s Motions [Doc. 143] for Summary Judgment of Invalidity of Claims 14 and 17 of U.S. Patent No. 5,406,260

The expert advisor likewise recommended that the Court grant Foundry's motion for summary judgment of invalidity of claims 14 and of claim 17. The Court adopted the expert advisor's report in full, finding the patent invalid as noted above.

### III. Foundry's Motion for Attorney Fees

#### A. Foundry's Justification for Seeking Attorney Fees

Foundry's motion, corrected as Doc. 240, states:

> . . .Chrimar unnecessarily prolonged this action by filing numerous meritless challenges to the Special Master's reports and recommendations, by failing to respond meaningfully to Foundry's discovery requests, by ignoring the Court's *Markman*, Collateral Estoppel, and other orders, by failing to concede the undisputed nature of certain material facts pertinent to Foundry's summary judgment motion, and by relying upon inadmissible expert opinions intended merely to prolong the inevitable and obscure the undeniable, namely, that Chrimar's asserted patent claims are invalid.

3

> Separately or together, Chrimar's filing of this baseless suit, its bad faith in doing so and in continuing to press this case despite clear and convincing evidence that the asserted claims were invalid, its mischaracterizations of law and fact, its reliance on conclusory expert opinions, and its intentionally confusing technical red herrings launched at Foundry and the Court in an untimely futile attempt to avoid summary judgment against it, renders this case exceptional.

### B. Initial Comments on Foundry's Motion

As will be seen, the grounds Foundry asserts for an award of attorney fees is belied by the record. From the date the case was filed, September 6, 2006 (Doc. 1), to the date the motion for attorney fees was filed, August 29, 2012 (Doc. 240), Foundry never once raised issues of litigation misbehavior on the part of Chrimar or frivolousness of Chrimar's defense of the validity of the '260 patent in pressing its claim of infringement by Foundry. Rather, Foundry appears to have kept the incidents of misbehavior by plaintiff <u>in pectore</u>, to be revealed only if it prevailed.

Moreover, Foundry has made no effort to apportion the attorney fees and expenses it claims to the degree of the misconduct it asserts. <u>See</u> <u>Special Devices, Inc. v. OEA, Inc.</u>, 269 F.3d 1340, 1343 (Fed. Cir. 2001) (noting that the "fee award "must bear some relation to the extent of the misconduct," quoting <u>Read Corp. v. Portec, Inc.</u>, 970 F.2d 816, 831 9Fed. Cir. 1992)); <u>Beckman Instruments, Inc. v. LKB Produkter, AB</u>, 892 F.2d 1547, 1553 (Fed. Cir. 1989) ("the penalty imposed must in some way be related to bad faith and misconduct" and compensate a party for the "<u>extra</u> legal effort to counteract the [ ] misconduct"). Foundry's broadsword approach to attorney fees and expenses is not in keeping with the requirement that there be a relationship as to the amount of the an award and the level of litigation misconduct.

Moreover, Foundry's shotgun attack on Chrimar's conduct in this case, would have the Court examine every thrust and counter-thrust involved in several phases of the case, i.e., the Markman proceedings, the motion for collateral estoppel, the motions for summary judgment, the special master's recommendations, and the objections to the special master's recommendations, and the appointment of a technical advisor. All this the Court would have to do under the glare of Chrimar's right under the First Amendment right to bring and defend a case. See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60 (1993) (recognizing that the right to bring and defend litigation implicates the First Amendment and holding that bringing allegedly frivolous litigation could only be sanctioned if the lawsuit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and stating that "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.").

### IV. Legal Standards for Awarding Attorney Fees

#### A. Section 1927

28 U.S.C. § 1927 reads:

> An attorney. . .who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

An award is appropriate under § 1927 when conduct by an attorney falls short of his or her obligations as an attorney, which results or causes additional expense to the opposite party. The claim is directed to an attorney's conduct and the claim must be

5

made against a specific attorney. BDT Products, Inc. v. Lexmark Intern.,, Inc., 602 F.3d 742, 751 (6th Cir. 2010). Here, over the course of the case, eight (8) different attorneys are listed on the docket sheet as representing Chrimar. Foundry's papers do not identify a particular attorney as the miscreant. Section 1927 offers no support to defendant's claim for attorney fees.

### B. Inherent Power

Defendant fares no better in justifying its right to attorney fees under the inherent powers of the Court. To justify an award on an inherent powers theory, the Court must find that plaintiff has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Id. The case must be sufficiently beyond exceptional to justify an award of attorney fees. Medtronic Navigation, Inc. v. Brainlab Medizinische Computer-Systeme GMBH, 603 F.3d 943, 966 (Fed. Cir. 2010). The call to the inherent powers of the Court as a basis of a claim for attorney fees falls flat.

### C. Rule 54

There is nothing in the text of Rule 54 which furthers an award of attorney fees. Rule 54 is a procedural rule. It does not offer an independent basis for an award of attorney fees.

### D. 35 U.S.C. § 285

Only Congress, and not the courts, can authorize an exception to the "American Rule," that attorney fees are not ordinarily recoverable by a prevailing party in federal litigation in the absence of statutory authorization. Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y, 421 U.S. 240, 247 (1975). Section 285 is one such statutory

exception. 35 U.S.C. § 285 provides:

> The court in exceptional cases may award reasonable attorney fees to the prevailing party

The law of § 285 is well known. Its history is described in Rohm & Haas Co. v. Crystal Chemical Co., 736 F.2d 688 (Fed. Cir. 1984). Twice in recent years the Court has discussed § 285. See Intellectual Science and Technology, Inc. v. Sony Electronics, Inc., 711 F.Supp.2d 795 (E.D. Mich. 2010), and Sundance, Inc. v. DeMonte Fabricating, Ltd, 2009 WL 1324901 (E.D. Mich. May 11, 2009).

The Federal Circuit recently discussed § 285 in reversing a district court's award of over 6 million dollars in attorney fees. In Checkpoint Systems, Inc. v. All-Tag Security S.A., 711 F.3d 1341, 1345 (Fed. Cir. 2013) (internal citations omitted), the Federal Circuit stated as follows:

> The general rule, called the "American Rule," is that each side shall normally bear its litigation burdens. The philosophy of the American Rule is to avoid that "the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel."
>
> The American Rule is not absolute, for the policy of avoiding undue burden on access to judicial remedy gives way when litigation is devoid of any justification, or is tainted by grievous misconduct. Section 285 codifies for patent cases the policy of "compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of litigation or Patent Office misconduct, to require it to bear its own costs." To receive attorney fees under §285, "a prevailing party must establish by clear and convincing evidence that the case is 'exceptional.'"
>
> In turn, patentees seeking to assert their government-granted patent rights, and accused infringers with grounds for believing the patent to be invalid or not infringed, are

7

shielded from the additional litigation burden of fee-shifting when their positions are reasonable. In <u>Highmark</u> the court explained: "It is established law under section 285 that absent misconduct in the course of the litigation or in securing the patent, sanctions may be imposed against the patentee only if two separate criteria are satisfied: (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." <u>Id</u>. "To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits."

Lastly and most significantly, the Federal Judicial Center's new publication, <u>Anatomy of a Patent Case</u> (2d Ed), pp. 165-166, instructs federal judges faced with the § 285 motion as follows (footnotes omitted):

> Under 35 U.S.C. § 285, the trial court is charged with the determination of whether a party's conduct is exceptional and whether attorneys' fees should be awarded. ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.") First, the trial court must determine whether a case is exceptional, which is a factual determination. . . .Second, the court must determine whether attorneys' fees are appropriate. * * *
>
> The purpose of Section 285 is twofold: (1) to permit an award of fees where it would be grossly unjust that the winner be left to bear the burden of its own counsel, something prevailing litigants normally bear; and (2) to deter parties from bringing bad-faith litigation."
>
> * * *
>
> The trial court has broad discretion in determining whether to award attorneys' fees. The court can weigh intangible as well as tangible factors when determining an award, including: the degree of culpability of the infringer; the closeness of the question; litigation behavior; and any other factors whereby fee shifting may serve as an instrument of justice. Whether a case is exceptional depends on findings of fact. Situations where the prevailing party may prove the existence of an exceptional case include the following: fraud or inequitable conduct in procuring the patent; litigation

8

> misconduct; vexatious, unjustified, or otherwise bad faith litigation; conduct that violates Federal Rule of Civil Procedure 11; a frivolous suit or willful infringement; or like infractions.
>
> * * *
>
> Absent misconduct by the patentee in the litigation or in securing the patent, a trial court may only sanction the patentee if the litigation is both brought in subjective bad faith and is objectively baseless. There is a presumption that the assertion of infringement of a duly granted patent is made in good faith. Thus, the underlying improper conduct and the characterization of the case as exceptional must be established by clear and convincing evidence.

If attorney fees are to be awarded, the only basis is under § 285. As explained below, this case was not exceptional within the meaning of § 285.

## V. This Was Not an Exceptional Case

There is no need for the Court to go into detail in assessing the legitimacy of the manner in which Chrimar went about trying to prove that Foundry infringed the '260 Patent, or in the way plaintiff defended defendant's attacks on the validity of Claim 17 of the '260 Patent. The reasons for the Court's finding that this case was not exceptional, and particularly that the case was not brought in bad faith or objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits, are summarized as follows:

### A. Chrimar's Case Had Substance

Chrimar filed three other cases in this district claiming infringement of the '260 Patent. In 2001, Chrimar sued Cisco Systems, Case No. 10-71113. The Court found claim 1 of the '260 patent invalid as anticipated. <u>Chrimar Systems, Inc. v. Cisco</u>

9

Systems Inc., 318 F. Supp. 2d 476 (E.D. Mich. 2004). The case later settled, Cisco took a license. Also in 2001, Chrimar sued PowerDsine, Ltd, Case No. 01-74081. The case also settled before trial with PowerDsine taking a license. Finally, in 2006, Chrimar sued D-Link Systems, Incorporated, case No. 06-13937. Again the case settled before trial with D-Link taking a license.[3]

In addition to litigation, Hubbell Premise Wiring took a license under the '260 Patent. See Declaration of John F. Austermann, III (Doc. 270), at ¶ 17 and Exhibit D to Doc. 270.

Prior to suit, Chrimar engaged a technical expert to examine defendant's product. The technical expert came to the conclusion Foundry infringed the '260 Patent. See id. at ¶ 9. Prior to suit, Chrimar offered defendant a license; Foundry declined the offer Id. at ¶ 10 and Exhibit B to Doc. 270.

Early in the case, Chrimar again offered Foundry a license; Foundry declined. See Doc. 271-2.

## B. The Course of Litigation

The course of the case in Court, while extended and contentious, was unexceptional and not out of the ordinary for a patent case. The case in its first stage went through a Markman proceeding, followed by summary judgment motions by defendant on the issues of validity, and non-infringement. A Special Master opined that the '260 Patent was invalid, and that there was a genuine issue over infringement.

---

[3]All of these cases were settled with the efforts of a mediator, a well-respected patent attorney. Although Foundry participated in the mediation, held in California, it did not reach a settlement with Chrimar.

Early in the case, Foundry filed a motion styled Defendant Foundry Networks, Inc.'s Motion To Consolidate, Bifurcate, and Expedite The Patent Misuse, Unenforceability, And Definition of Rand Counterclaims (Doc. 18). The motion related to Foundry's counterclaim of patent misuse and unenforceability, as well as like counterclaims of PowerDsine, Inc. and D-Link Systems, Inc., who were, as described above, claimed infringers of the '260 Patent. Chrimar responded (Doc. 20). The motion was withdrawn (Doc. 22).

The case proceeded with defendant, together with PowerDsine, Inc. and D-Link Systems, Inc., collectively defending until the end of March, 2010, after PowerDsine, Inc. and D-Link Systems, Inc., settled as noted above. Thereafter, Foundry defended alone.

While the case in court reflects excessiveness on the part of both parties (the record includes 234 docket entries preceding the dismissal judgment), dismissal of the case after a long process is not grounds for finding that Chrimar should be subject to fee shifting.

### C. The Presumption of Validity

Here the issue of validity was initially raised as an affirmative defense in Foundry Networks, Inc.'s Answer to Complaint for Patent Infringement and Counterclaims for Declaratory Judgment (Doc. 3). The issue in the case which was adjudicated and which won the day for defendant was the invalidity of Claim 17 on the grounds of obviousness. Indeed:

> It has been suggested in patent cases that the presumption
> of validity might protect the patentee in cases where validity
> is an issue. Where a patentee is suing for a declaratory

> judgment of invalidity. . .it can probably rely upon the
> presumption of validity to establish the non-exceptional
> nature of the case. . . .

Harmon, Homan, and McMahon, <u>Patents and the Federal Circuit</u>, 10th ed (BNA) at p. 1167.

In other words, the '260 patent was presumptively valid and Chrimar, as the patent owner, was entitled to rely on that presumption when bringing suit. That Chrimar lost on validity militates against a finding that the case was exceptional. <u>See Advance Transformer Co. v. Levinson</u>, 837 F.2d 1081, 1085 (Fed. Cir. 1985) (reversing award of attorney fees based on exceptional case following an invalidity finding, noting that the plaintiff's "position on the merits was not totally without substance, and the presumption of validity accompanying the issuance of his patents cannot be ignored.")

### D.  The Motion Papers Do Not Show an Exceptional Case

In Foundry's initial Memorandum In Support Of Motion To Declare Exceptional Case (Doc. 240), under the heading <u>Chrimar Resorted to Litigation Misconduct</u> (p. 14), defendant argued that plaintiff engaged in litigation misconduct by pursuing a claim that it "knew was invalid and its case against Foundry doomed" (p. 15), in less than one page of text. The thrust of the argument was that Chrimar was aware of "the widespread use of 10BaseT Wiring at the time the '260 Patent was filed would be a strong motivation for one skilled in the art to combine this wiring with the cable detect circuit shown in Fig. A-2 of the Green Book."

In Foundry's Supplemental Brief (Doc. 261), the like argument under the heading <u>Chrimar's Misrepresentation of Evidence to the Court and the Federal Circuit</u> (p. 6), covers seven pages (pp. 6-13), and includes a multitude of citations to the record.

12

Chrimar's Brief in Response (Doc. 268), under the heading <u>Chrimar Did Not Misrepresent Evidence And There Is No Frivolous Or Vexatious Litigation</u>, covers 3 pages (pp. 13-16), and concludes as follows:

> Foundry is primarily arguing that ChriMar engaged in litigation misconduct by relying on the position originally found by Professor Lemley, later confirmed by Professor Winick, ultimately admitted by Foundry's counsel, and agreed to by Foundry's expert on cross examination.

What these papers show is that Foundry is merely relying on the fact that its invalidity argument carried the day and Chrimar should have known all along that it would. This is not sufficient to justify finding an exceptional case. By similar fashion, to the extent Foundry relies on the fact that the Federal Circuit affirmed without issuing a substantive opinion to show this was an exceptional case, such reliance is misplaced. <u>See Sparks v. Eastman Kodak Co.</u>, 230 F.3d 1344 (Fed. Cir. 2000) (finding that the mere fact that appeal was decided without a written opinion did not justify award of frivolous appeal sanctions against unsuccessful appellant).

### E. This Case is Distinguishable from Cases Found to Be Exceptional

The conduct of Chrimar in this case which Foundry would have the Court find exceptional, is to be contrasted to the conduct of the sanctioned party in cases where the Federal Circuit approved an award of attorney fees.

In <u>Eon-Net, LP v. Flagstart Bancorp</u>, 653 F.3d 1314, 1324-25 (Fed. Cir. 2011), the Federal Circuit found litigation misconduct because "counsel destroyed documents prior to initiation of the lawsuit," "intentionally did not implement a document retention plan," and "failed to engage in the claim construction process in good faith," among other things. Additionally, the Federal Circuit found that plaintiff displayed a "lack of

13

regard for the judicial system."

In <u>Yamanouchi Pharmaceutical Co., Ltd. v. Danbury Pharmacal, Inc</u>., 231 F.3d 1339 (Fed. Cir. 2000), the Federal Circuit found that defendant filed a wholly unjustifiable ANDA certification, and engaged in litigation misconduct.

In <u>Rambus, Inc. v. Infineon Technologies, AG</u>, 318 F.3d 1081, 1106 (Fed. Cir. 2003), the Federal Circuit found litigation misconduct in the form of "failure to list documents on its privileged log, false and misleading testimony," "obfuscating discovery responses, refusing to admit facts genuinely at issue," and "destroying documents before suit, but after sending cease and desist letters."

In <u>Eltech Systems Corporation v. PPG Industries, Inc</u>., 903 F.2d 805, 810 (1990), the Federal Circuit found that plaintiff engaged in "studied ignorance" by filing an infringement suit which it knew was baseless. Plaintiff had in hand a report that established non-infringement and did not disclose it.

In <u>Highmark, Inc. v. Allcare Health Management Systems, Inc.</u>, 687 F.3d 1300 (2012), the Federal Circuit upheld the district court's finding that the assertion of infringement was objectively unreasonable and brought in subjective bad faith. The district court found the case exceptional because there was no evidence in the record that supported the allegation of infringement, plaintiff asserted meritless legal positions, shifted its claim construction positions, and made misrepresentations in connection with a motion to transfer venue.[4]

---

[4]On October 1, 2013, the Supreme Court granted certiorari in <u>Highmark</u>, 2013 WL 1217353, 81 USLW 3562 (U.S. Oct 01, 2013) (NO. 12-1163, 12A763) No. 12-1163. The Supreme Court will consider the extent to which a district court's exceptional-case finding that a suit is objectively baseless is entitled to deference. The grant of certiorari

14

In Monolithic Power Systems, Inc. v. 02 Micro International, Ltd., ___ F.3d ___, 2013 WL 4055141 (Aug. 13, 2013), the Federal Circuit upheld a district court's finding that a case was exceptional. That district court found the misconduct and unprofessional behavior occurred because plaintiff misrepresented the date that schematics were generated, plaintiff filed motions to mask false testimony, and plaintiff adopted an overall vexatious litigation strategy.

Finally, in Taurus IP, LLC v. Daimler Chrysler Corp., ___ F.3d ___, 2013 WL 4034384 (Aug. 9, 2013), the Federal Circuit upheld a finding that the case was exceptional because the patentee relied on a proposed claim construction that was unreasonable and did not conform to the standard canons of claim construction.

## VI. Patent Trolls

Foundry, suggesting that Chrimar is a patent troll (Doc. 261, p. 28, n. 11) is poorly taken, and seriously damages its credibility. Foundry also accused Chrimar of being a troll in an article published in Law 360, Doc. 268-2, available at http://law360.com/articles/430405/print?section=ip. Foundry's accusations require separate comment. As Chrimar says in its response,"[t]his recitation is only provided for the purposes of evoking an emotional response," and to prejudice the Court against Chrimar. (Doc. 268 at p. 12).

A patent troll, as is well known, is a pejorative term used to describe a company

---

has no bearing on the Court's decision. Likewise, the Supreme Court's grant of certiorari in another patent case involving an award of attorney fees, Octane Fitness, LLC v. Icon Health & Fitness, Inc., 2013 WL 1283843, 81 USLW 3567 (U.S. Oct 01, 2013) (NO. 12-1184), has no impact. In Octane, the Supreme Court will consider the propriety of the Federal Circuit's two-part test for determining whether a case is exceptional. In Octane, the accused infringer is advocating for a less stringent test.

that enforces a patent against one or more infringers in an unduly aggressive or opportunistic manner.  See http://en.wikipedia.org/wiki/Patent_troll.  See also, GAO-13-465, Intellectual Property - Assessing Factors That Affect Patent Infringement Litigation Could Help Improve Patent Quality.

Chrimar is the assignee of the inventor of the '260 patent.  In three of the four infringement cases brought by Chrimar in this district, after long and contentious proceedings, three of the defendants took a license.  There is nothing in Chrimar's conduct in any of the four cases that was unduly aggressive or opportunistic.  Chrimar made out a credible case for infringement which was never adjudicated, and put up a credible case in defending validity.

### VII.  Conclusion

There is a difference between advancing a losing argument and in prosecuting a frivolous case.  Here we have the former, not the latter.

That Foundry spent over $5 Million Dollars achieving a favorable result offers no good reason to engage in fee-shifting.  The traditional American Rule is that each party to a lawsuit bears the expense of maintaining its position.  Fee-shifting is sanctioned only in an "exceptional case."

As the Court has previously observed, this case is exceptional only in the magnitude of the amount of paper generated and in the attorney fees and expenses incurred.  Somewhere along its course, from the date of filing the complaint to today with the denial of Foundry's application for attorney fees and expenses, it got out of hand.  This is not the occasion to explore how and why.  It is enough to say that each

06-13936 Chrimar Systems v Foundry Networks

party pays its own attorneys.


       S/Avern Cohn
       AVERN COHN
       UNITED STATES DISTRICT JUDGE


Dated: October 3, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 3, 2013, by electronic and/or ordinary mail.

       S/Sakne Chami
       Case Manager, (313) 234-5160